UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NANCY D. RYAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. 16-CV-00164-LHK<br><br>**ORDER DENYING MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 27 |

Plaintiff Nancy Ryan ("Plaintiff") brings this action against Defendant United States of America ("Defendant") for refund of income tax penalties assessed against the Ryans. Before the Court is Plaintiff's Motion for Leave to File a Second Amended Complaint ("SAC"). ECF No. 27. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and VACATES the motion hearing set for March 9, 2017. Having considered the parties' submissions, the record in this case, and the relevant law, the Court DENIES Plaintiff's Motion for Leave to File a Second Amended Complaint.

## I. BACKGROUND

### A. Factual Background

In 2000, Plaintiff and her husband, Kevin Ryan, (collectively, the "Ryans") received a

1
Case No. 16-CV-00164-LHK
ORDER DENYING MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

large amount of capital gains income. ECF No. 12, First Amended Complaint ("FAC") ¶ 11. The Ryans invested some of the capital gains income in a foreign currency investment. *Id.* ¶ 12. Plaintiff alleges that the foreign currency investment suffered losses in 2000, which were recorded as a loss in the Ryans' taxes for that year. *Id.* As a result, the Ryans paid $1,446,434 in taxes, $20,455.24 in interest, and $16,202.64 in late-payment penalties for the year 2000. *Id.* ¶ 14.

In 2004, the Internal Revenue Service ("IRS") audited the Ryans' 2000 tax return and "disallowed the losses arising from the 2000 foreign currency investment, resulting in an increased tax assessment to the Ryans." *Id.* ¶ 17. The IRS described the foreign currency investment and claimed losses as an illegal "Son of Boss" transaction because the IRS determined that the "transactions lacked economic substance based on retroactive tax regulations issued by the IRS." *Id.* ¶ 20. The Ryans entered an IRS repayment program called the "Son of Boss Settlement Initiative," "which resulted in the assessment on the Ryans of $17.5 million in taxes, interest and a maximum agreed-upon 10% penalty on the underpayment." *Id.* ¶ 21.

The Ryans did not have enough liquid capital on hand to pay the full $17.5 million payment at once and requested an installment agreement. *Id.* ¶ 24. On December 10, 2004, the Ryans submitted Form 433-A, Collection Information Statement, to the IRS, which provided information on the Ryans' "assets, income, and monthly expenses [in order to] demonstrat[e] [that] they did not have the financial resources to pay the tax liability in a single lump-sum payment." *Id.* ¶ 25. The IRS agreed to provide the Ryans an installment agreement. *Id.* The installment agreement required the Ryans to pay a down payment of $3 million by April 30, 2005, a later lump-sum payment of $2 million on July 15, 2005 from the sale of the Ryans' second home or from another source, and monthly payments of $175,000 starting in June 20, 2005, which were to increase to $275,000 starting on June 20, 2006. *Id.* ¶ 26. In May 2005, the Ryans and the IRS signed a Form 906 Closing Agreement that confirmed (1) the terms of the Son of Boss settlement and installment agreement, and (2) indicated that the Ryans' maximum penalty for underpayment in 2000 would be 10%. *Id.* ¶ 30.

As part of the installment agreement discussions, the Ryans requested the IRS to offset the

2

Case No. 16-CV-00164-LHK
ORDER DENYING MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

amount owed for the 2000 tax year with amounts the Ryans had overpaid in 1998 ($150,829.52) and 1999 ($427,093). *Id.* ¶¶ 148–49. Indeed, Plaintiff's proposed SAC indicates that the Ryans discovered these overpayments because the installment agreement required the Ryans to pay any back taxes for the 1999 tax year to obtain the installment agreement. ECF No. 27-2 ¶¶ 163–79 ("Proposed SAC").

The Ryans made the initial down payment and monthly payments owed on the installment agreement on time. FAC ¶ 33. However, before the $2 million lump-sum payment was due, the Ryans discovered that a burst water heater had caused extensive water damage and the growth of black mold in the home they were going to sell to make the $2 million lump-sum payment. *Id.* ¶ 34. On July 20, 2005, the Ryans informed Marie Maple, the IRS collections officer overseeing the Ryans' installment agreement that the Ryans were unable to sell their second home and were seeking a $2 million home equity loan on their primary home to make the lump-sum payment. *Id.* ¶ 35. However, the Ryans' primary home had liens from both the IRS and other parties.

On September 28, 2005, Maple mailed the Ryans a "Notice of Defaulted Installment Agreement" indicating the IRS's "intent to terminate your installment agreement and collect the entire amount of your liability if you do not meet all the conditions of your agreement." *Id.* ¶ 38. The letter stated that the Ryans needed to contact the IRS within 30 days of the notice or "your installment agreement will be terminated." *Id.* ¶ 38.

On October 20, 2005, the Ryans faxed Maple a letter indicating that all liens on the Ryans' primary home other than the IRS liens "had been removed" and that they were seeking a $2 million home equity loan. *Id.* ¶ 39. The Ryans also sought other sources of funds to make the now-late $2 million lump-sum payment. *Id.* ¶¶ 42–44. On December 12, 2005, the Ryans' counsel informed Maple that the Ryans had been approved for a $2 million home equity loan subject to the IRS subordinating its lien on their primary home. *Id.* ¶ 51.

On January 20, 2006, the Ryans submitted an Application for Certificate of Subordination of Lien with the Federal Tax Lien Unit with the IRS. *Id.* ¶ 52. Before a decision was made, the Ryans' case was transferred from Maple to another IRS collection agent, David Palmer. *Id.* ¶ 53.

3
Case No. 16-CV-00164-LHK
ORDER DENYING MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

On April 6, 2006, Palmer recommended approval of the lien subordination. *Id.* ¶ 56. However, on the same day, Palmer's supervisor rejected the lien subordination because the Ryans "did not seek a line of credit equal to the full $4.5 million value of their home." *Id.* ¶ 58.

Around the same time, in late 2005 and early 2006, the Ryans' financial circumstances caused them to be unable to make the monthly payments on the installment agreement from liquid assets. *Id.* ¶ 71–73.

In May or June of 2006, Palmer terminated the installment agreement. *Id.* ¶ 74. On May 24, 2006, "the IRS foreclosed liens on [the Ryans'] securities accounts and other liquid assets." *Id.* ¶¶ 69, 74. On September 30, 2007, the Ryans sold their second home and, on October 1, 2007, paid the IRS $2,713,494.47 from those funds. *Id.* ¶ 79.

On October 1, 2007, the IRS imposed a penalty on the Ryans in the amount of $2,414,217.74 without notice. *Id.* ¶ 85. In May 2009, the Ryans were able to withdraw funds from one of his investments and made a payment of $5,968,332.36 to the IRS. *Id.* ¶ 78. By October 26, 2012, the Ryans had paid their tax liabilities from the year 2000 and the penalty in full. *Id.* ¶ 96.

### B. Procedural History

#### 1. Within the IRS

On April 17, 2008, the Ryans sent a letter to Palmer and "requested full abatement of the [October 1, 2007] Penalty," and on July 28, 2008, sent a follow-up letter to Palmer's supervisor. *Id.* ¶ 89. On October 21, 2008, Palmer denied the request for penalty abatement. *Id.* ¶ 90. On May 10, 2010, Palmer's supervisor denied the Ryans' July 28, 2008 request and informed the Ryans that they "did not have reasonable cause to abate the penalty." *Id.* ¶ 91.

On May 21, 2010, the Ryans filed a protest of the decision of Palmer's supervisor with the IRS Appeals Office. *Id.* ¶ 92. On January 13, 2011, Sherry Eaton of the IRS Appeals Office informed the Ryans that their appeal would not be considered. *Id.* ¶ 93. The letter informed the Ryans that "[the IRS Appeals Office] does not have the administrative authority to consider the case because it is related to [liability for a prohibited Son of Boss transaction]. The taxpayers

4

executed a Form 906 Closing Agreement under the Son of Boss settlement initiative in which they unambiguously waived all rights to [IRS Appeals Office] consideration." *Id.* ¶ 94.

By October 26, 2012, the Ryans had paid their tax liabilities from the year 2000 and the penalty in full. *Id.* ¶ 96. On July 1, 2013, the Ryans filed a "Claim for Refund and Request for Abatement" with the IRS seeking full or partial abatement of the penalty plus interest. *Id.* ¶ 98. On January 13, 2014, the IRS denied the Ryans' claim for refund and request for abatement. *Id.* ¶ 99.

On January 23, 2014, the Ryans filed a request for reconsideration of the denial of the claim with the IRS Penalty Appeal Coordinator. *Id.* ¶ 100. On April 28, 2014, the IRS sent the Ryans a letter stating that "your issues were not fully addressed by the Internal Revenue Service prior to them forwarding your case to Appeals" and "that your case, along with your correspondence dated January 23, 2014 has been returned for further development." *Id.* ¶ 101. The request for reconsideration was shuffled between multiple IRS offices between May 30, 2014 and early December of 2015. *Id.* ¶¶ 101–03.

In September 2015, Kevin Ryan passed away. *Id.* ¶ 72. On September 8, 2015, Plaintiff "received notice of the disallowance of the reconsideration of the refund claim from the IRS office in Kansas City, Missouri." *Id.* ¶ 105. Plaintiff filed an appeal and request for reconsideration of the decision on November 11, 2015 with the Kansas City IRS Appeals Office. *Id.* ¶ 109. On February 25, 2016, the Kansas City IRS Appeals Office denied Plaintiff's appeal and request for reconsideration. *Id.* ¶ 112.

### 2.     Before This Court

On January 11, 2016, Plaintiff filed the instant suit. ECF No. 1. On March 30, 2016, Plaintiff filed the FAC, which removed the administrator of Kevin Ryan's estate from the instant suit. *See* FAC. The FAC alleges seven causes of action based on the application of the October 1, 2007 penalty and the subsequent appeal of that penalty including: (1) IRS abuse of discretion, (2) breach of the implied covenant of good faith and fair dealing in the installment agreement due to the IRS's failure to grant a lien subordination, (3) wrongful denial of Plaintiffs' appeal rights

before the IRS, (4) wrongful denial of abatement of the penalty, (5) contractual bar on the penalty pursuant to the Form 906, Closing Agreement, (6) request for first-time abatement of the statute of limitations for requesting offset of the Ryans' 2000 taxes using the Ryan's overpayment on their 1998 and 1999 taxes, and (7) untimeliness of the penalty.  FAC ¶ 114–61.

On December 15, 2016, Plaintiff filed the instant Motion for Leave to File a Second Amended Complaint.  ECF No. 27 ("Mot.").  On December 29, 2016, Defendant filed an opposition, ECF No. 29 ("Opp'n"), and on January 5, 2017, Plaintiff filed a reply, ECF No. 31 ("Reply").

## II.  LEGAL STANDARD

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave [to amend] when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).  Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).  Of these considerations, "it is the consideration of prejudice to the opposing party that carries the greatest weight."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).  "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend."  *Id.* (emphasis in original).  Nevertheless, a proposed amendment may be denied as futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."  *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).  Ordinarily, however, "courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed."  *Netbula, LLC v. Distinct Corp.*, 212 F.R.D.

534, 539 (N.D. Cal. 2003).

## III. DISCUSSION

As noted above, as part of the 2005 installment agreement for the payment of the Ryans' 2000 taxes, the Ryans were required to pay any owed back taxes from 1999. Proposed SAC ¶ 163–79. The Ryans discovered that the Ryans had overpaid their 1998 and 1999 taxes and requested an offset from their 2000 tax liability in the overpaid amount. *Id.* The IRS denied the request because the statute of limitations for requesting a refund on the 1998 and 1999 taxes had passed. *Id.*

In Plaintiff's proposed SAC, Plaintiff seeks to add two additional causes of action: (1) breach of the implied covenant of good faith and fair dealing in the installment agreement as a result of the IRS's failure to offset the Ryan's underpayment of taxes in 2000 with overpayments from the Ryans' 1998 and 1999 taxes ("Proposed Count VIII"); and (2) a claim for equitable recoupment based on the IRS's failure to offset the Ryan's the underpayment of taxes in 2000 with overpayments from the Ryans' 1999 taxes ("Proposed Count IX"). Proposed SAC ¶¶ 163–79.

Defendant argues that filing an amended complaint in the instant case would be improper because (1) amending the complaint with the new claims would be futile, and (2) amendment would cause Defendant prejudice. The Court finds amendment would be futile and therefore does not reach Defendant's argument concerning prejudice.

A district court may deny a motion for leave to amend where amendment would be futile. *Miller*, 845 F.2d at 214; *see Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller*, 845 F.2d at 214. The Ninth Circuit has alternatively stated that the test of whether amendment would be futile is "identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Id.* (citing 3 J. Moore, Moore's Federal Practice ¶ 15.08[4] (2d ed. 1974)).

7

Case No. 16-CV-00164-LHK
ORDER DENYING MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

Defendant argues that Plaintiff's proposed new claims fail for three reasons. First, Defendant argues that the "doctrine of variance" eliminate this Court's subject matter jurisdiction over the new claims. Second, Defendant argues that Plaintiff's Proposed Claim VIII for breach of the implied covenant of good faith and fair dealing and Proposed Claim IX for equitable recoupment fail in their own right. The Court finds that the doctrine of variance bars Plaintiff's proposed claims, and therefore the Court need not address Defendant's other arguments.

The Court thus turns to consider the doctrine of variance. The United States "is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Quarty v. United States*, 170 F.3d 961, 972 (9th Cir. 1999). Under 26 U.S.C. § 7422(a), a taxpayer "seeking a refund must first file an administrative claim with the Secretary of the Treasury before filing suit in federal court." *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1091 (9th Cir. 2007). "Treasury Regulation § 301.6402–2(b)(1), in turn, provides that the administrative claim 'must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.'" *Id.* (quoting 26 C.F.R. § 301.6402–2(b)(1)). This exhaustion requirement is "an inseverable condition on Congress's waiver of sovereign immunity." *Id.*

"[I]n the absence of a waiver by the government, the taxpayer cannot recover in its suit for refund on a different ground than set forth in the claim for refund." *Quarty*, 170 F.3d at 972 (quoting *Bear Valley Mut. Water Co. v. Riddell*, 493 F.2d 948, 950–51 (9th Cir. 1974)). Stated more specifically, "[i]f the [refund] claim on its face does not call for investigation of a question, the taxpayer may not later raise that question in a refund suit." *Boyd v. United States*, 762 F.2d 1369, 1371 (9th Cir. 1985); *see also Commissioner v. Lundy*, 516 U.S. 235, 240, 244, 252 (1996) (noting that under 26 C.F.R. § 301.6402–2(b)(1), a claim for refund in district court must state the ground for a refund with specificity). If these requirements are not satisfied, the Court lacks subject matter jurisdiction. *Quarty*, 170 F.3d at 972.

"The government may waive compliance with the specificity requirements of Treasury Regulation § 301.6402–2(b)(1) if it has investigated the merits of a claim and taken action upon

it." *Quarty*, 170 F.3d at 973 (citation omitted). Waiver can be established if the IRS "has in fact seen fit to dispense with [its] formal requirements and to examine the merits of the claim. It is not enough that in some roundabout way the facts supporting the claim may have reached [the IRS]." *Id.* (citation omitted).

Plaintiff concedes that the issues of the 1998 and 1999 tax overpayments were not part of Plaintiff's claim for refund before the IRS. *See* Reply at 9 ("While not mentioned, the IRS's refusal to credit the $577,000 overpayments against the 2000 tax liabilities was an adverse financial setback that impaired the Ryans' ability to satisfy the Installment Agreement."), 9–10 ("While not mentioned, the Ryans' substantial overpayment of taxes for 1998 and 1999 and the failure of the IRS to credit such overpayments in 2005 when requested by them diminished the cash available to the Ryans to satisfy their obligations and avoid imposition of the penalty."); *see also* ECF No. 31-6 (administrative claim).

Moreover, Plaintiff does not argue that waiver occurred as a result of the IRS actually considering the merits of the claim. In fact, Plaintiff concedes that the IRS did not address the 1998 and 1999 tax overpayments. *See* Reply at 10–11 ("[T]he IRS considered only one of the eight claims-Number 8-and, that claim appears to have been dealt with cursorily without investigation or understanding by the IRS."). Accordingly, under *Quarty*, because there is no argument or allegation that the IRS actually addressed the 1998 and 1999 tax offset issue, the IRS did not waive these claims.

Nonetheless, Plaintiff argues that its new claims are "derived from or [are] integral to the ground[s] timely raised in the refund claim." *Cencast Servs., L.P. v. United States*, 94 Fed. Cl. 425, 440 (2010). Courts have allowed relief on issues not explicitly mentioned in an administrative claim where "the auditing agent, during his investigation of the claims, necessarily considered the facts which underlie these additional grounds." *Union Pac. R. Co. v. United States*, 389 F.2d 437, 444 (Ct. Cl. 1968); *see also Davis v. United States*, 2016 WL 6997168, at *13 (N.D. Cal. Sept. 6, 2016) (considering whether the "disputed issue was 'part and parcel' of the administrative refund claims"). However, the United States Supreme Court has held that where a

9

claim refers to multiple specific facts as the basis of a claim, it does not "call for [a] general audit of the taxpayer's affairs." *United States v. Andrews*, 302 U.S. 517, 525 (1938) ("[The administrative claim] was as specific as it could be made and pointed unerringly to the items the Commissioner must consider."). A different rule would violate the requirement that the taxpayer must set forth "in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." 26 C.F.R. § 301.6402–2(b)(1).

Plaintiff argues that the doctrine of variance does not prevent the addition of Proposed Claim VIII for breach of the implied covenant of good faith and fair dealing in the installment agreement or Proposed Claim IX for equitable recoupment. The Court addresses each claim in turn.

Under Proposed Claim VIII, Plaintiff alleges that the IRS's refusal to offset the Ryans' 2000 tax payments with Plaintiff's 1998 and 1999 overpayments interfered with the Ryans' ability to comply with the installment agreement, and thereby constituted a breach of the implied covenant of good faith and fair dealing. Plaintiff argues that the standard found in *Cencast* and *Union Pacific* has been met because there are allegations in the administrative claim that "assert[] the [same] theory" that underlies Proposed Claim VIII. Reply at 9. For example, claim 6 of the administrative claim asserts that the IRS's "arbitrary and unreasonable refusal to grant the Subordination of Lien contributed to the Ryans' default on the installment agreement and the IRS's eventual termination of it and imposition of the penalty." ECF No. 31-6 at 11. Moreover, Plaintiff asserts that other facts in the administrative claim indicate IRS actions that "frustrated the Ryans' performance of the Installment Agreement and ultimately led to IRS wrongful termination of the Installment Agreement and imposition of the penalty." Reply at 9. Essentially, Plaintiff argues that by asserting multiple specific examples of the IRS's interference with Plaintiff's ability to comply with the installment agreement, the IRS necessarily considered *all* of the IRS actions that could potentially have interfered with Plaintiff's ability to comply with the installment agreement, including the issue of the 1998 and 1999 tax overpayments.

However, Plaintiff provides no basis to conclude that the IRS would have "necessarily

considered the facts which underlie" Proposed Claim VIII—the refusal to offset the 2000 taxes by the 1998 and 1999 overpayment of taxes—based on allegations made about other, completely distinct IRS actions. *Union Pacific*, 389 F.2d at 444. The IRS's refusal to offset the 1998 and 1999 overpayment of taxes bears no direct relation to the other alleged acts of interference by the IRS, such as the refusal to subordinate the liens on the Ryans' home. Moreover, Plaintiff's administrative claim's allegation of multiple specific IRS actions did not intrinsically "call for [a] general audit of the taxpayer's affairs" by the IRS that included the 1998 and 1999 tax overpayments. *Andrews*, 302 U.S. at 525. Accordingly, because Plaintiff did not raise Proposed Claim VIII or its underlying facts in the administrative claim, the doctrine of variance bars Plaintiff from bringing that claim in the instant suit.

Under Proposed Claim IX, Plaintiff asserts equitable recoupment with respect to the IRS's refusal to offset the Ryans' 2000 taxes with their 1999 overpayment of taxes.[1] As noted above, the IRS rejected the offset because a claim for refund on the 1999 overpayment was barred by the statute of limitations for claims for refund. "The doctrine [of equitable recoupment] permits a party to a tax dispute to raise a time barred claim [for refund] in order to reduce or eliminate the money owed on [a] timely claim [brought by the IRS]." *Estate of Branson v. C.I.R.*, 264 F.3d 904, 909 (9th Cir. 2001) (citing *Bull v. United States*, 295 U.S. 247, 258 (1935)). In arguing that the doctrine of variance does not apply to Proposed Claim IX, Plaintiff argues that the administrative claim raised facts that showed that the IRS's actions were unfair and inequitable. Reply at 9–10. Plaintiff argues that Proposed Claim IX for equitable recoupment involves "the same theory and reliance upon fairness, justice and equity." *Id.*

Plaintiff's argument fails for two reasons. First, as with Proposed Claim VIII, as Plaintiff concedes, the administrative claim makes no mention of the IRS's failure to offset the 1999 overpayment of taxes or any related facts. On that basis alone, the equitable recoupment claim is barred because the allegations of other unrelated facts do not indicate that the IRS "necessarily

---

[1] While Proposed Claim VIII is based on both the 1998 and 1999 overpayment of taxes, Proposed Claim IX only addresses the 1999 overpayment of taxes.

11
Case No. 16-CV-00164-LHK
ORDER DENYING MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

considered the facts which underlie" the equitable recoupment claim. *Union Pacific*, 389 F.2d at 444.

Second, equitable recoupment is not based simply on principles of "fairness," but has five specific requirements: (1) "the same 'transaction, item or taxable event' must be subject to two taxes"; (2) "the taxes must be inconsistent in that the Tax Code authorizes only a single tax"; (3) "the tax sought to be recouped must be time barred"; (4) "there must be an 'identity of interest' between the parties paying the duplicative tax"; and (5) "the court in which the recoupment claim is brought must independently have jurisdiction to adjudicate the claim." *Estate of Branson*, 264 F.3d at 909. Neither the doctrine of equitable recoupment nor any of these factors for its application were raised in the administrative claim.[2]

Thus, the doctrine of variance bars Plaintiff's Proposed Claim VIII for breach of the implied covenant of good faith and fair dealing and Plaintiff's Proposed Claim IX for equitable recoupment. Accordingly, the Court finds Plaintiff's proposed claims to be futile and DENIES Plaintiff's Motion for Leave to File a Second Amended Complaint.

## IV. CONCLUSION

For the foregoing reasons, DENIES Plaintiff's Motion for Leave to File a Second Amended Complaint.

**IT IS SO ORDERED.**

Dated: March 6, 2017

_____
LUCY H. KOH
United States District Judge

---

[2] Plaintiff also argues that the IRS's bad acts in this case require the Court to estop Defendant from asserting the doctrine of variance as to the proposed claims. Reply at 11. However, where, as here, the claims were not raised in the administrative claim with the IRS, the Court lacks subject matter jurisdiction over the claims. *Quarty*, 170 F.3d at 972. Absent subject matter jurisdiction, the Court lacks the power to provide Defendant the requested relief.